IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD KNORR INTERNATIONAL, LTD., and RICHARD KNORR, Individually, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 08 C 5414 ) ) |
| GEOSTAR, INC., a foreign corporation, MACAO DEVELOPMENT COMPANY, a foreign corporation, ROCO KI MANAGEMENT, INC., a foreign corporation, ROCO KI SERVICES, INC., a foreign corporation, MACAO BEACH RESORT, INC., a foreign corporation, ESTATES AT MACAO BEACH RESORT, INC., a foreign corporation, MACAO BEACH REAL ESTATE, INC., a foreign corporation, HACIENDAS ACQUISITION, INC., a foreign corporation, MACAO ACQUISITION, INC., a foreign corporation, and RESORT RESOURCES, INC., a foreign corporation, | ) ) HONORABLE DAVID H. COAR ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Richard Knorr and Richard Knorr International, Ltd. ("RKI") have filed suit against Geostar, Inc. and several of its subsidiary corporations for breach of contract, breach of fiduciary duties, and constructive fraud. The defendants have moved to dismiss Knorr's first amended complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Now that the jurisdictional dust has settled, five of the defendants remain parties to this motion: Macao Beach Resort ("MBR"), Estates at Macao Beach Resort ("EMBR"), Haciendas at Macao Beach Resort ("HMBR") (collectively, "the Operating Companies"); Geostar; and Resort Resources. (*See* Dkt.

No. 125, Memorandum Opinion and Order of 3/30/2010.) For the reasons set forth below, their motion to dismiss for failure to state a claim is GRANTED.

## FACTS[1]

The relevant allegations in the complaint, which the court must take as true for present purposes, are as follows: Richard Knorr and his architectural and real-estate-development firm RKI (collectively, "Knorr") conceived of "Roco Ki," a combination of a destination resort and residential community to be situated on the Caribbean shore of the Dominican Republic. In 2001, Knorr was introduced to Geostar, an investment company that develops high-end hotel and real-estate projects around the world, and Geostar "sought to be the primary sponsor, financier, and owner of the Roco Ki development."

Geostar then formed "an intricate network of off-shore corporations to act as holding companies and tax shelters, and to disguise the beneficial ownership of the Roco Ki development." Most of these subsidiaries share agents, officers, and directors with Geostar; moreover, Geostar and Macao Development Company ("Macao") "exercise complete and direct control" over the other subsidiaries' activities. Knorr is a minority shareholder in the Operating Companies. The majority shareholder in HMBR is Macao; the complaint says nothing further about ownership of MBR or EMBR.

From 2003-2006, representatives of Geostar and its subsidiaries met at Knorr's Chicago office "to fashion a joint enterprise for the Roco Ki development." The purpose of the meetings was "to discuss and plan the land acquisition, to plan and implement sales and marketing strategies, to plan and formalize any consulting contract formation, to plan and formalize investment and subscription agreements, to plan and implement the accounting and budgetary

---

[1] Many of the allegations in the complaint are now immaterial, since they pertain only to defendants that have been dismissed for lack of personal jurisdiction. For the sake of clarity and concision, the court omits these allegations.

policies and procedures, and to plan and formalize the schedule of financing." These meetings were held at Knorr's office because neither Geostar nor any of its subsidiaries had any office space in the United States.

The initial phase of the Roco Ki project was the development of the land owned by the three Operating Companies, known as Parcel A. As construction and development on Parcel A progressed, disputes arose between Knorr and the defendants "about numerous matters including, but not limited to, the development, financing, and overall management of the Roco Ki development." In an effort to settle these disputes, Knorr and the defendants entered mediation. On April 2, 2007, the parties reached a settlement agreement at a mediation session conducted by retired federal judge Richard B. McQuade, Jr. Knorr has attached to his complaint a letter from Judge McQuade setting out the terms of the agreement. (*See* Compl., Ex. A.) The agreement provides, among other things, that Knorr would relinquish his intellectual property and his equity in the Roco Ki venture, in exchange for $40,000,000 plus a beachfront estate and one or two marina slips at Roco Ki. The defendants were also to continue the parties' "present arrangement" of making $120,000 "transitional" payments to Knorr every other week until the purchase of his stock was completed on the agreed upon five-year schedule. Knorr is no longer managing the Roco Ki development.

In 2008, Knorr filed this suit. In Count I, he alleges that Geostar and the Operating Companies have breached the settlement agreement by refusing to close the sale of Knorr's stock in the Operating Companies and by failing to make the required payments and real-estate transfers. In Count II, Knorr alleges that Geostar and HMBR have breached their fiduciary duties to Knorr by engaging in various schemes to deplete HMBR of the assets that were to be used to satisfy their obligations under the settlement agreement. In Count III, Knorr alleges that

Geostar, the Operating Companies, and Resources committed constructive fraud by engaging in these schemes and by deceiving Knorr into believing that they were capable of performing the settlement agreement. Further details are set forth below, as they become relevant to the court's analysis of each claim.

## **LEGAL STANDARD**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), that is, "a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (*Twombly* applies to "all civil actions"). This requirement imposes two relatively low hurdles. *First*, a complaint "must describe the claim in sufficient detail to give the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1964). *Second*, the allegations "must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level.'" *Concentra*, 496 F.3d at 776. If the allegations do not suggest a right to relief—if for instance, a plaintiff relies merely on conclusions, labels, or formulaic recitations of the elements of a cause of action—a Rule 12(b)(6) motion should be granted. *See Twombly*, 550 U.S. at 570.

Where, as here, the plaintiff submits along with its complaint copies of contracts or other documents referenced therein, the court also may consider those documents without converting a motion to dismiss into one for summary judgment. *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 858 (7th Cir. 2002). That includes a purported copy of an agreement to which the statute of frauds applies. *See id.*

## ANALYSIS

### *Count I: Breach of Contract*

In Count I, Knorr alleges that Geostar and the Operating Companies have breached the parties' mediated settlement agreement.[2] The defendants correctly respond that the statute of frauds bars this claim because the alleged agreement was never set forth in a signed writing.

Oral settlement agreements are enforceable in Illinois, subject to the statute of frauds. *Lynch, Inc. v. SamataMason, Inc.*, 279 F.3d 487, 490 (7th Cir. 2002) (Illinois citations omitted). The Frauds Act provides, as relevant here, that "no action shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof" unless the agreement is "in writing, and signed by the party to be charged therewith." 740 ILCS 80/1 (2010). Similarly, an action for breach of "any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them" is barred unless the contract is "in writing, and signed by the party to be charged therewith." *Id.* § 80/2.

The relevant terms of the settlement agreement are within the scope of these provisions. *First*, Knorr alleges that Geostar and the Operating Companies agreed to pay him $40,000,000 for his intellectual property and for his equity in the Operating Companies, according to the following schedule: "$13,500,000 at Closing, and $26,500,000 paid in five annual installments on each anniversary of the Closing date." (Compl. ¶39.) The defendants, however, have "failed and refused to Close and pay the Purchase Price" for Knorr's shares. (*Id.* ¶42.) By its terms, this payment schedule cannot be performed within the space of one year; it is therefore governed by § 80/1 of the Frauds Act. *See Rose v. Mavrakis*, 799 N.E.2d 469, 476 (Ill. App. Ct. 2003) (Frauds Act applies to 20-month payment schedule even though defendant could have

---

[2] Although not included in the caption, Resort Resources appears to be implicated in the allegations of Count I. (*See* Compl. ¶41.) As a practical matter, however, this makes no difference, since the factors that compel dismissal of Count I are not tied to any particular defendant(s).

accelerated payment); *Silvestros v. Silvestros*, 563 N.E.2d 1084, 1085 (Ill. App. Ct. 1990) (same for twenty-five month installment plan). *Second*, Knorr alleges that HMBR agreed to convey to him ownership rights in a beachfront lot at Roco Ki and one or two marina slips, which it has failed to do. (*Id.* ¶40.) These real-property interests are governed by § 80/2 of the Frauds Act. Knorr needs either a signed writing or an exception to the statute of frauds in order to prevail.

The settlement agreement was never set forth in any writing signed by the defendants, or for that matter, by any party in this case. Knorr admits this in so many words, pointing out that "a more formal agreement" was never executed after the oral agreement was reached during mediation. (*Id.* ¶41.) As evidence of the alleged contract, Knorr attaches a letter from Judge McQuade recounting the results of the mediation session and requesting payment of his fee. (*Id.*, Ex. A.) Judge McQuade, of course, is not the party to be charged under the agreement; his letter does not qualify as a signed writing for purposes of the Frauds Act.

To prevail, then, Knorr must show that some exception to the statute of frauds excuses the lack of a signed writing. One such exception, or class of exceptions, occurs when litigants reach an oral settlement agreement in the presence of the trial judge or stipulate in open court that such an agreement has been reached. *See K4 Enters., Inc. v. Grater, Inc.*, 914 N.E.2d 617 (Ill. App. Ct. 2009); *Rose*, 799 N.E.2d 469; *Szymkowski v. Szymkowski*, 432 N.E.2d 1209 (Ill. App. Ct. 1982); *Kalman v. Bertacchi*, 373 N.E.2d 550 (Ill. App. Ct. 1978). Relying especially on *K4* and *Rose*, Knorr argues that the present case falls within this class of exceptions to the statute of frauds. Knorr's argument is mistaken.

In *Rose*, the court held that a "settlement agreement reached during a court-ordered settlement conference conducted in the trial judge's chambers . . . is exempted from the writing requirement of the Frauds Act where that requirement would otherwise be applicable," whether

or not the terms of the agreement were stated in open court or transcribed by a court reporter. 799 N.E. 2d at 477. Since the trial judge had participated in the settlement conference, the court could "assure[] itself that the parties [were] being truthful and acting in good faith" and could resolve any disputes that might arise concerning the existence or terms of an agreement. *Id.* at 478 (quoting *Kohn v. Jaymar-Ruby, Inc.*, 28 Cal. Rptr. 2d 780, 782 (Cal. Ct. App. 1994)). Thus, the usual concerns of the statute of frauds are assuaged when the court participates in settlement talks, since the court can exercise independent judgment as to whether the parties truly intended to be bound, and if so, on what terms. Likewise, the trial judge in *K4* enforced a settlement agreement that the parties had reached in his presence. But the holding of *K4* is even less germane to the present case than the holding of *Rose*, since the defendant in *K4* did not raise a statute of frauds defense on appeal even though the facts appear to have warranted one. *See* 914 N.E.2d at 622-23 (multi-year payment schedule contemplated by oral settlement agreement). In any event, none of this provides a basis for Knorr's position.

Knorr's argument founders on the simple fact that the mediation at which the ostensible agreement was reached was neither court ordered nor court supervised, *see Rose*, 799 N.E.2d at 478; indeed, it was not a judicial proceeding at all, as there was no pending litigation between the parties at the time. Knorr attempts to trade on the fact that the mediator in this case happened to be a retired federal judge (*see* Second Updated Response Brief, at 5) but with all due respect to Judge McQuade, his participation cannot transform a nonjudicial proceeding into a judicial proceeding, much less one supervised by this court. Thus, *Rose* does not apply here; because this court did not participate in the mediation, it cannot make an independent assessment of the proceedings. Nor does *Kalman* apply; since the terms of the settlement agreement were never stipulated on the record in open court, there are no judicial admissions to serve as the functional

equivalent of a signed writing. *See* 373 N.E.2d at 549-550 ("It is not the intention of the Statute of Frauds to affect stipulations made in a court and subject to the court's supervision and control."). In short, Knorr has not cited, and this court has been unable to find, any authority for the proposition that nonjudicial proceedings can exempt an agreement from the statute of frauds because they happen to be mediated by a retired judge. A signed writing is required.

Alternatively, Knorr argues that dismissal would be premature before the court took parol evidence for the purpose of interpreting the alleged agreement set forth in the letter from Judge McQuade. Knorr points out that parol evidence may be used to interpret a contract that is subject to the statute of frauds. *See Borg-Warner Corp. v. Anchor Coupling Co.*, 156 N.E.2d 513, 516 (Ill. 1958). Fair enough, but that does not help here; nothing in Knorr's complaint turns on the interpretation of a writing claimed to be ambiguous or unclear. Here, the issue is whether there is a signed writing that satisfies the statute of frauds; in *Borg-Warner*, the issue was whether the signed correspondence exchanged between the parties revealed an offer and acceptance. *See id.* at 516-17. In effect, Knorr takes *Borg-Warner* to imply that parol evidence can be offered to satisfy—or perhaps to abrogate—the signed-writing requirement of the Frauds Act. Neither is the case, and no amount of parol evidence will transform Judge McQuade's letter into a writing signed by the defendants or show that such a writing is unnecessary. The possibility of weighing parol evidence later on is not an argument against dismissal.

Lastly, Knorr briefly suggests that the settlement agreement is by now exempt from the signed-writing requirement of the statute of frauds because it has been partially performed. The equitable doctrine of part performance may remove an oral agreement from the statute of frauds if "the contract has been at least partially performed by the party seeking the remedy and the acts allegedly done in performance are positively attributable exclusively to the contract." *Anderson*

*v. Kohler*, 922 N.E. 8; 2009 Ill. App. LEXIS 1268, at *28-30 (Ill. App. Ct. Feb. 11, 2010). Since it is an equitable doctrine, "part performance will avoid application of the statute of frauds only where a party is seeking the equitable remedy of specific performance;" it "may not be invoked to sustain an ordinary action at law for damages for breach of contract." *Id.* at *29.

Knorr's complaint does not support a part-performance theory. Count I appears to be limited to a demand for money damages rather than specific performance. Beyond that, to invoke the doctrine, Knorr must plead that *he* has performed under the agreement—not that the defendants have—and that he has done so in reasonable reliance on the agreement. *See Dickens v. Quincy Coll. Corp.*, 615 N.E.2d 381, 385 (Ill. App. Ct. 1993) ("When one party to an oral contract has so far performed his part of the agreement that to allow the other party to invoke the statute of frauds would perpetrate a fraud upon him, chancery will intervene to enforce the contract."). But the complaint does not allege that Knorr has performed any obligations of his own that arose under the oral settlement agreement.[3] In his brief, Knorr singles out two allegations to support his part-performance theory. *First*, Knorr alleges that the defendants made $120,000 bi-weekly "transitional" payments for over a year. (Compl. ¶42.) This allegation does not satisfy either requirement of the part-performance doctrine. For one thing, these payments are not "positively attributable exclusively to the contract," since Judge McQuade's letter clearly states that this was a preexisting arrangement between the parties. (*See id.*, Exh. A ¶2 ("MBR shall continue the present arrangement of paying RKI $120,000.00 every two weeks . . . .").) More importantly, this does not allege performance by the party seeking the remedy. *Second*, Knorr alleges that the defendants "began exercising exclusive control over RKI's intellectual property" even though their right to do so "was conditional upon payment of the Purchase Price

---

[3] This would also doom any theory of equitable estoppel, an exception to the statute of frauds that Knorr does not raise in his brief. *See, e.g., Hubble v. O'Connor*, 684 N.E.2d 816, 823 (Ill. App. Ct. 1997).

which never occurred." (*Id.* ¶41.) This does not allege performance of the agreement at all; it alleges breach of the agreement. The doctrine of part performance finds no application in the allegations of Knorr's complaint.

Since there is neither a signed writing nor an applicable exception to the statute of frauds, Knorr's breach-of-contract claim must be dismissed.

### *Count II: Breach of Fiduciary Duty*

In Count II, Knorr alleges that Geostar and HMBR breached fiduciary duties owed to him by engaging in various schemes to "leverage, mortgage, and systematically deplete and devalue the assets of HMBR," such as funneling HMBR assets to other Geostar projects; mortgaging HMBR land to raise capital for other Geostar subsidiaries; using HMBR assets for the individual purposes of Geostar representatives, officers, and directors; and causing HMBR to be grossly undercapitalized, among other things. (*Id.* ¶¶47-50.)

To state a claim for breach of fiduciary duty, Knorr must allege that (1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused his injuries. *Prodromos v. Everen Secs., Inc.*, 906 N.E.2d 599, 611 (Ill. App. Ct. 2009) (citations omitted). A fiduciary duty can exist as a matter of law or because of special circumstances. *Crichton v. Golden Rule Ins. Co.*, 832 N.E.2d 843, 854 (Ill. App. Ct. 2005). Either way, the well-pleaded allegations of the complaint do not reveal any relationship between Knorr and Geostar or HMBR that would give rise to fiduciary duties.

Knorr mounts two arguments in his brief as to why Geostar owes him fiduciary duties. *First*, he contends that Geostar is his co-shareholder in HMBR. The complaint, however, alleges that Macao, not Geostar, owns stock in HMBR. (Compl. ¶27-28, 46.) Assuming *arguendo* that Macao (as the majority shareholder in HMBR) owes fiduciary duties to Knorr (as a minority

shareholder in HMBR), Geostar would only be potentially liable for Macao's breach of those duties if there was a basis for piercing the corporate veil between Geostar and Macao. *See Forsythe v. Clark USA, Inc.*, 836 N.E.2d 850, 854 (Ill. App. Ct. 2005); *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009). Although the allegations, if true, might justify piercing the veil between Geostar and HMBR, or between Macao and HMBR (*see* Compl. ¶50) Knorr does not argue that there is any basis for piercing the veil between Geostar and Macao, much less allege what that basis might be. Macao's ownership of HMBR stock therefore cannot render Geostar liable for breach of any fiduciary duties that Macao may owe to Knorr.[4]

*Second*, Knorr argues that Geostar owes him fiduciary duties because it was engaged with him in a "joint business enterprise." For this to qualify as a fiduciary relationship, it must be either a partnership or a joint venture, rather than an arm's-length business relationship based in a project of mutual interest. A partnership is an association of two or more persons to carry on, as co-owners, a business for profit. 805 ILCS 205/6(1). A joint venture is similar but has a single enterprise. *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006) (citing *Harmon v. Martin*, 71 N.E.2d 74, 83 (Ill. 1947)). Knorr's complaint does not plead even the rudiments of either one.

A partnership exists where the parties (1) joined together to carry on a trade or venture, (2) for their common benefit, (3) with each contributing property or services to the enterprise, and (4) having a community of interest in the profits. *Autotech*, 471 F.3d at 748 (Illinois citation omitted). A joint venture exists where there is (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint ventures; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill or

---

[4] This basic deficiency in the complaint obviates Knorr's discussion of Illinois cases that, he claims, find fiduciary duties among co-shareholders. Those cases might have applied to Macao, but Macao was dismissed as a named defendant for lack of personal jurisdiction. Accordingly, the court sees no need to discuss these cases in any detail.

knowledge; (4) a degree of joint proprietorship or mutual right to the exercise of control over the enterprise; and (5) a provision for joint sharing of profits and losses. *Id.* (citation omitted).

While Rule 8 does not require Knorr to plead all the niceties of a partnership or joint venture, it does require him to trace at least the bare outlines of some fiduciary relationship between himself and Geostar. Here the complaint falls far short. Knorr alleges that Geostar "sought to be the primary sponsor, financier, and owner of the Roco Ki development." (Compl. ¶17.) To that end, representatives of Geostar and its subsidiaries "met at the offices of RKI in Chicago, Illinois, on many occasions over the course of many months beginning in 2003 and continuing through 2006 to fashion a joint enterprise for the Roco Ki development." (*Id.* ¶21.) The purpose of these meetings, according to the complaint, was "to discuss and plan the land acquisition, to plan and implement sales and marketing strategies, to plan and formalize any consulting contract formation, to plan and formalize investment and subscription agreements, to plan and implement the accounting and budgetary policies and procedures, and to plan and formalize the schedule of financing." (*Id.*) Knorr does not plead any of the essentials of a partnership or joint venture with Geostar; notably, nothing here hints at any manifestation of intent by the parties to be associated as a partnership or joint venture, or at a scheme of co-ownership, or at a provision for joint sharing of profits and losses. True, in a close corporation (which HMBR may be), co-shareholders are the functional equivalent of partners or joint venturers in these essential respects, and so may be treated as such, under Illinois law, for the purpose of fiduciary-duty analysis. *See Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218-19 (7th Cir. 1995) (citing *Hagshenas v. Gaylord*, 557 N.E.2d 316, 323 (Ill. App. Ct. 1990)). But that cannot rope Geostar into a partnership, joint venture, or equivalent fiduciary relationship with Knorr unless the veil between Geostar and Macao, Knorr's co-shareholder, can be pierced.

Again, Knorr has never suggested that it can be.

As it stands, then, the complaint merely incants the hazy and ambiguous phrase 'joint enterprise' without pleading the essential indicia of any fiduciary relationship between Knorr and Geostar. Count II fails to state a claim against Geostar.

Knorr's claim against HMBR fails at the threshold: the ostensible basis for the fiduciary relationship is that Knorr owns shares in HMBR, but corporations do not owe fiduciary duties to their shareholders. *Small v. Sussman*, 713 N.E.2d 1216, 1221 (Ill. App. Ct. 1999) ("[T]he circuit court also correctly dismissed the breach of fiduciary duty claim as to [the corporate defendant] on the independent grounds that a corporation—as distinct from its officers and directors—does not owe a duty to shareholders. That holding is black letter law in Illinois."). Count II must therefore be dismissed.

### *Count III: Constructive Fraud*

In Count III, Knorr alleges that Geostar, the Operating Companies, and Resort Resources committed constructive fraud. The relevant allegations overlap with those in Count II: the defendants "have concertedly depleted, diluted, and otherwise wasted assets" that were to be used to perform the settlement agreement, and they have "deceived" Knorr into believing that they were capable of performing the agreement. (Compl. ¶52.) For much the same reasons that apply to Count II, Count III fails to state a claim.

Constructive fraud "is a breach of a legal or equitable duty that the law declares fraudulent because of its tendency to deceive others, irrespective of the moral guilt of the wrongdoer." *Houben v. Telular Corp.*, 231 F.3d 1066, 1074-75 (7th Cir. 2000) (Illinois citation omitted); *see also In re Gerard*, 132 Ill. 2d 507, 528-29 (Ill. 1989). It does not require proof of actual dishonesty or intent to deceive. *Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 809 (Ill.

App. Ct. 1998) (citation omitted).  "Constructive fraud can arise only if there is a confidential or fiduciary relationship between the parties." *Id.* (citation omitted); *Joyce v. Morgan Stanley & Co.*, 538 F.3d 797, 800 (7th Cir. 2008).  Indeed, a plaintiff claiming constructive fraud "must show that that defendant (1) breached the fiduciary duty he owed to plaintiff and (2) knew of the breach and accepted the fruits of the fraud." *Id.* (Illinois citation omitted).

Knorr's constructive-fraud claim founders on the same difficulty as his breach-of-fiduciary-duty claim: the complaint does not allege any basis for a fiduciary relationship between Knorr and the relevant defendants.  Geostar and HMBR have already been addressed, and there is no need to repeat the analysis here.  Similar considerations, however, apply to the remaining defendants named in Count III: MBR, EMBR, and Resort Resources.

With respect to MBR and EMBR, Knorr's claim fails for the same reasons that apply to HMBR.  In his brief, Knorr argues that MBR and EMBR owe him a fiduciary duty on account of their "common ownership of property and joint enterprise." In support of this contention,  Knorr refers the court to ¶30 of the complaint—which, it turns out, says nothing about Knorr and these defendants owning any property in common.  It says, rather, that MBR, EMBR, and HMBR own the land at Roco Ki known as Parcel A.  A broader reading of the complaint reveals that Knorr owned stock in MBR and EMBR as well as HMBR (Compl. ¶38) but the complaint says nothing about co-ownership of land or any of the essential elements of a partnership or joint venture.  In short, Knorr stands in precisely the same relationship to MBR and EMBR as he does to HMBR, at least from the perspective of fiduciary-duty analysis.  So MBR and EMBR do not owe him fiduciary duties.  *See Small*, 713 N.E.2d at1221.  And that in turn means that they cannot be liable to him for constructive fraud.  *See Stathis*, 692 N.E.2d at 809; *Joyce*, 538 F.3d at 800.

Lastly, the complaint says nothing at all about the relationship between Knorr and Resort

Resources, and does not allege, even in conclusory terms, that the relationship was a fiduciary one. Resort Resources figures in only two allegations in the entire complaint. The first is the pithy fact that Resort Resources, like the other Geostar subsidiaries, is incorporated in Nevis. (Compl. ¶13.) The second is that Resort Resources assigned the Roco Ki turtle logo to other Geostar subsidiaries before Knorr was paid for his intellectual property, thereby breaching the settlement agreement. (*Id.* ¶41.) These allegations fail to state a claim for constructive fraud against Resort Resources.

## **CONCLUSION**

For the foregoing reasons, the remaining defendants' motion to dismiss for failure to state a claim is GRANTED.

Enter:

/s/ David H. Coar

_____

David H. Coar

United States District Judge

**Dated: August 25, 2010**